**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, | ) ) ) ) |
| *Plaintiffs* | ) ) |
| v. | ) ) |
| FEDERAL AVIATION ADMINISTRATION, *et al*., | ) ) ) |
| *Defendants* | ) ) ) |
| and | ) ) |
| SPACE EXPLORATION TECHNOLOGIES CORP., | ) ) ) |
| *Defendant-Intervenor*. | ) ) ) |

Civil Case No. 23-1204

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO**
**FILE A SUPPLEMENTAL COMPLAINT**

**INTRODUCTION**

Plaintiffs have followed the Rules of Civil Procedure, which provide that a party seeking to put forward new claims based on events that occurred after the date of the initial pleading should file a supplemental complaint. Fed. R. Civ. P. 15(d). It is indisputable that the claims in Plaintiffs' proposed Supplemental Complaint arise from events that occurred *after* the Initial Complaint was filed on May 1, 2023. They pertain to the Federal Aviation Administration's (FAA) failure to comply with the National Environmental Policy Act (NEPA) when it issued a "written reevaluation" and a new/amended launch license on November 15, 2023, for the second launch of the Starship/Superheavy rocket, and the U.S. Fish and Wildlife Service's (FWS) failure

1

to comply with the Endangered Species Act (ESA) when it issued an "addendum" to its 2022 Biological Opinion on November 14, 2023. As these events occurred well after the filing of the Initial Complaint, the rules specify that a supplemental complaint, rather than an amended complaint, is the proper course of action here. Defendants' and Defendant-Intervenor's arguments to the contrary are misplaced.

Importantly, neither Defendants nor Defendant-Intervenor have shown that they are actually prejudiced by Plaintiffs' motion, or that granting the motion will cause undue delay or inconvenience. *See Cause of Action Inst. v. DOJ*, 282 F. Supp. 3d 66, 72 (D.D.C. 2017). As explained below, their arguments regarding any potential for "confusion" regarding the claims at issue or the scope of the record are entirely specious. Indeed, the claims are quite straightforward and there is no reasonable basis to suggest that the Supplemental Complaint will cause confusion when the parties move forward with summary judgment briefing in this matter.

Finally, Defendant-Intervenor's arguments regarding notice under the ESA's 60-day notice provision are erroneous and have no bearing on whether the Supplemental Complaint may be filed. Plaintiffs' Supplemental Complaint seeks relief against FWS under the Administrative Procedure Act (APA) for its arbitrary and capricious review of the April 20 launch explosion. Under Supreme Court precedent squarely on point, this is an APA claim and *not* an ESA citizen suit claim, and therefore does not require 60-days' notice. Regardless, Plaintiffs did provide sufficient notice, undermining any basis for denying the motion based on a purported lack of notice to the FAA. Further, Defendant-Intervenor's argument that Plaintiffs are de facto seeking relief against the FAA under the ESA is without merit, as the Supplemental Complaint makes clear (and Plaintiffs reaffirm here) that the relief being sought for the claim is solely against FWS, which Plaintiffs undoubtedly have standing to pursue.

In any event, Defendant-Intervenor's arguments are not only meritless, but also immaterial to the sole matter now before the Court—whether Plaintiffs should be permitted to supplement their Complaint in accordance with Rule 15(d). Any arguments Defendant-Intervenor might wish to make regarding jurisdiction or standing as it relates to potential relief *against FAA* have no bearing on whether Plaintiffs should be allowed to file the Supplemental Complaint with a plainly valid APA claim *against FWS*. If Plaintiffs were to pursue relief against FAA for violations of the ESA through summary judgment briefing (which Plaintiffs have no intention of doing as the Supplemental Complaint makes clear), Defendant-Intervenor would have the opportunity to raise jurisdictional defenses; however, that hypothetical scenario certainly provides no basis for denying the motion to file the Supplemental Complaint.

The Court should therefore grant Plaintiffs' motion.

## ARGUMENT

### A. Plaintiffs' Supplemental Complaint Complies with the Rules of Civil Procedure

It is well established that Rule 15(d) is properly used to "put forward new claims or defenses based on events that took place after the original complaint or answer was filed...." *Thorp v. District of Columbia*, 325 F.R.D. 510, 513 (D.D.C. 2018) (quoting *United States v. Hicks*, 283 F.3d 380, 386 (D.C. Cir. 2002)). That is precisely what Plaintiffs did here. And the new claims are undoubtedly based on events that occurred *after* the Initial Complaint was filed: They pertain to FAA's Written Reevaluation under NEPA and the issuance of a second launch license, and FWS' addendum to the Biological Opinion, which were not completed until many months later. Since the final agency actions forming the basis of the claims were taken by the agencies well after the Initial Complaint, Defendants' and Defendant-Intervenor's argument that Plaintiffs should have instead filed an amended complaint are

misplaced, since "[t]he distinguishing feature of the [supplemental pleading] is that it sets forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *Hicks*, 283 F.3d at 385 ("Supplements therefore contrast with amendments, which typically rest on matters in place *prior to* the filing of the original pleading.") (citation omitted).

Defendants suggest that the claims in the Supplemental Complaint are based on the same final agency action as the Initial Complaint, Def. at 3; however, that is inaccurate. The Initial Complaint concerns the FAA's final agency action as set forth in the PEA/FONSI/ROD and seeks declaratory and injunctive relief regarding those documents. The Supplemental Complaint, in contrast, is specific to final agency actions that came later, and seeks relief specific to the FAA's written reevaluation and amended launch license, and FWS' addendum to the BiOp. Defendants' attempt to conflate the final agency actions at issue in the various claims in order to support their misplaced argument that an amended complaint was required is unconvincing. Plaintiffs followed the civil rules, which clearly require a supplemental complaint under these circumstances.

And while Rule 15(d) does not provide specificity as to the form a supplemental complaint may take, it in no way suggests that a party must replace the initial complaint and provide a redline when filing a supplemental complaint, as Defendant-Intervenors argue. Indeed, that would be inconsistent with plain language: Black's Law Dictionary defines the term "Supplemental" as "supplying something additional," undermining Defendants' and Defendant-Intervenor's suggestion that the initial complaint must be reformulated into a supplemental complaint. *See* Black's Law Dictionary at 1452 (7th ed. 1999) (Black's Seventh Edition). Rather, since a supplemental complaint is "additional," it can and should be in a separate document.

Indeed, the D.C. Circuit has implicitly endorsed the course of action taken by Plaintiffs here, citing, without taking issue, facts from a supplemental complaint that incorporated by reference portions of the initial complaint. *See Zukerman v. United States Postal Serv.*, 961 F.3d 431, 435, 441 (D.C. Cir. 2020) (discussing the "Supplemental Complaint and the First Amended Complaint it incorporates"); *see also Dupree v. Jefferson*, 666 F.2d 606, 609 (D.C. Cir. 1981) (discussing a supplemental complaint that brought new claims "in addition to those set forth in" the initial complaint).

Thus, it is readily apparent that in this Circuit a party may file a separate supplemental complaint based on new developments that incorporates portions of the initial complaint by reference. Defendant-Intervenor's argument that there is a "one-operative-complaint rule," requiring one document that acts as the operative pleadings, has no basis in the plain language of Rule 15(d)—which expressly contemplates a "supplement" to, not a replacement of, the original complaint—and ignores the procedural context here. Indeed, the case law they rely on is solely focused on *amendments* to complaints, and the general rule that an amended complaint replaces the prior complaint, such that there is only one operative complaint following an amendment. As such, in *Savignac v. Jones Day*, 341 F.R.D. 120 (D.D.C. 2022), the discussion regarding a "single complaint" followed multiple amendments by the plaintiff, which could not be considered three separate pleadings. *Id.* at 127. The Court, however, was not considering a supplemental complaint, as Defendant-Intervenor (at 3) would have this Court believe. And while it makes sense for a court to hold in the context of multiple *amended* complaints that there may be only one operative version—because an amendment by definition alters and replaces the prior complaint—that is not so for a supplemental complaint. Rather than an amendment to include facts or allegations that could and should have been included in the initial complaint,

supplemental complaints raise *new* pleadings based on events that occurred later in time and are thus being added to an ongoing litigation. This addition of claims, unlike amendment of existing claims, is properly done through a separate filing, since the new claims do not relate back to the existing ones. *See* Rule 15.[1]

The other cases Defendant-Intervenor relies on (at 3) for the proposition that there must only be one operative document serving as the complaint are similarly focused on amended complaints and merely hold that "an amended complaint takes the place of the original complaint, effectively invalidating the original complaint." *Smith v. Price*, No. 3:11-CV-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012). This has no bearing on whether a supplemental complaint must replace the initial complaint or can be a separate document. In fact, Defendant-Intervenor appears to have improperly suggested that the court in *Smith v. Price* stated that the same rule applies to supplemental complaints, arguing that "courts have held that a *supplemental* or amended complaint under Rule 15 'must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed.'" Def-Int. at 3 (emphasis added) (quoting *Smith v. Price*, No. 3:11-CV-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012)). What the court actually stated was, "it is well-settled that an *amended complaint* must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Id.* (citation omitted) (emphasis added). Defendant-Intervenor's suggestion that the court applied this statement to the context of supplemental complaints is a clear misstatement of the court's decision. Regardless, it

---

[1] To be clear, Plaintiffs are not suggesting that there is some prohibition in the rules on combining supplements and amendments to a complaint in one document. But, by the same token, it is certainly permissible, and clearly contemplated by Rule 15(d), that supplemental complaints raising new claims based on new developments may be freestanding documents.

is apparent that the court in *Smith v. Price* was only considering amended complaints and the decision provides no support for Defendant-Intervenor's argument that Plaintiffs' Supplemental Complaint violates the rules of civil procedure.

The same is true for all of the other cases that Defendant-Intervenor cites, including *Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 269 (D.D.C. 2018) (discussing a pro se litigant and the filing of an amended complaint), as well as the cases included in footnote 1 of Defendant-Intervenor's Opposition, which pertain to amended complaints and not supplemental complaints.[2] Defendant-Intervenor fails to cite a single case where a court required supplemental pleadings to be filed as an amended complaint replacing the initial complaint, and to accept their argument would blur the line between the two, which ignores the distinction made in Rule 15. It is also inconsistent with this Circuit's precedent discussed above, wherein the D.C. Circuit has accepted separate supplemental pleadings that incorporated by reference portions of an initial complaint, just as Plaintiffs have done here.

The same is true for Defendant-Intervenor's arguments regarding the Court's Standing Order, which (at ¶ 5) states that a redline is required for "amended pleadings," but says nothing about supplemental pleadings. Again, a redline comparing the original with the amended pleading makes sense in the context of an amendment, where the party is making changes to the existing document to cure deficiencies or add information that could and/or should have been included in the original document. But that is irrelevant and pointless in the context of a

---

[2] The only case cited in footnote 1 of Defendant-Intervenor's Opposition that concerns a quasi-supplemental pleading is *Competitive Enter. Inst. v. McCarthy*, Civil Action No. 21-1238 (CKK), 2021 WL 9937858, at *4 (D.D.C. Oct. 7, 2021); however, there the court was considering a combined Amended and Supplemental complaint which became the operative pleading, thereby superseding the defendants' motion to dismiss, and the Court did *not* grapple with whether there may be only one operative document serving as the complaint or whether a supplemental complaint can and should be a separate document.

supplemental pleading, which does not change the initial pleading, but rather adds new claims based on events that occurred later in time. That provision of the Standing Order is, on its face, simply inapplicable here.

Therefore, providing a separate supplemental complaint does not result in "fragmentary pleading" as Defendant-Intervenor argues. Def-Int. at 3. Rather, it is an expressly authorized and proper course for adding new claims based on events that occurred after the initial complaint was filed. Plaintiffs have followed the applicable rule, and the motion should be granted.

### B. Granting the Motion Will Not Prejudice the Parties or Cause Confusion

As this court has found, Rule 15(d) motions "should be 'freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'" *Cause of Action Inst.*, 282 F. Supp. 3d at 72 (quoting *Hall v. CIA*, 437 F.3d 94, 101 (D.C. Cir. 2006)). And "[i]t is the opposing party's burden to demonstrate why leave should not be granted." *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 12 (D.D.C. 2017). Defendants and Defendant-Intervenor have failed to meet that burden.

Any argument that there will be confusion in this matter should the Court grant Plaintiffs' motion is misplaced and disingenuous. Frankly, it appears to be little more than a delay tactic. If the Court allows Plaintiffs to file the Supplemental Complaint, there would be three claims at issue: (1) that FAA violated NEPA when is issued the PEA/FONSI/ROD and the initial launch license; (2) that FAA violated NEPA by failing to undertake a supplemental NEPA analysis and to fully analyze the impacts of the first launch before issuing a second launch license; and (3) that FWS violated the APA by issuing an arbitrary and capricious addendum to the Biological Opinion. These are straightforward claims that counsel for DOJ and SpaceX certainly should

have not trouble comprehending for purposes of creating the record and moving forward with summary judgment briefing. This is particularly so since Plaintiffs will presumably move for summary judgment first (as in all APA cases) and their summary judgment motion will leave no conceivable doubt as to what is at issue.

Moreover, Defendants and Defendant-Intervenor have made no showing that any actual confusion would occur that would prejudice the parties should the motion be granted. Defendants suggest that an "Amended Complaint that more clearly identifies the specific claims and relief sought against each federal agency defendant would likewise enable more efficient litigation of Plaintiffs' claims ostensibly challenging the separate decisions of two different federal agencies." Def. at 3-4. But this merely elevates form over function, even apart from the fact that Plaintiffs rightfully seek to supplement rather than amend their complaint in accordance with Rule 15, as discussed above. The Initial Complaint and the proposed Supplemental Complaint *already* clearly provide the specific claims and relief sought against each federal agency, and wasting Plaintiffs' (and the Court's) time by requiring the melding of those two documents into one would not alter that reality or provide any further necessary clarity. Indeed, it might lead to *more* confusion because the Supplemental claims are based on later events and seek different relief from the initial claim (i.e., vacatur of the PEA/FONSI/ROD in the Initial Complaint vs. declaratory relief as to the written reevaluation and remand to prepare a supplemental NEPA analysis in the Supplemental Complaint), and therefore combining those into one document risks *creating* confusion as to which portions of the requested relief pertain to which claims. Rather, as contemplated by Rule 15(d), the filing of a distinct supplemental complaint based on the new events clarifies which facts support which claims and requests for relief.

Defendant-Intervenor's argument that there is the potential for confusion because the NEPA claim in Plaintiffs' Initial Complaint is "mostly duplicative" with the NEPA claim in the Supplemental Complaint, and therefore it is unclear whether Plaintiffs are "abandoning the first supplemental NEPA claim as unripe," is erroneous and illogical. Def-Int. at 4. While Plaintiffs' NEPA claim in the Initial Complaint does state that additional NEPA analysis is required to address the April 20 launch, the focus of the claim was on FAA's failure to prepare an environmental impact statement (EIS) and to take a "hard look" at several aspects of the launch program—such as noise, heat, light, and closures affecting the community—as NEPA requires. ECF 3 at ¶¶ 96-103. The NEPA claim in the Supplemental Complaint is therefore far from "duplicative" of the initial NEPA claim.

Tellingly, when it became time to produce the administrative record, Federal Defendants refused to include anything regarding the first (i.e., April 20) launch of the Starship/Superheavy rocket, arguing that the portion of Plaintiffs' claim regarding the need for supplemental NEPA review would only become ripe if and when the agency completed its review of that event and issued a new launch license for a second launch without complying with NEPA. *See* ECF No. 28-2 (AR Index, providing documents only up until April 14, 2023, prior to the first launch of the Starship/Superheavy Rocket).[3] Thus, after those later events occurred, Plaintiffs filed the Supplemental Complaint regarding the need for supplemental NEPA review in light of the entirely *new* decision FAA made to proceed with another launch without engaging in any supplemental NEPA review of the impacts caused by the April 20 launch (or anything else).

---

[3] Plaintiffs can produce, should it be necessary, a declaration and accompanying email correspondence showing that Defendants would not include materials regarding the April 20 launch in the record based on their position that any claim regarding supplemental NEPA analysis would not be ripe until a new license was issued.

Therefore, the Supplemental Complaint does not in any way "abandon" any of Plaintiffs' claims. Rather, based on the new factual developments and entirely new agency decision, it ensures that there is an indisputably ripe claim, consistent with FAA's own articulated position, challenging the refusal to prepare a supplemental NEPA analysis.

Again, given the straightforward nature of the claims set forth in Plaintiffs' Initial and Supplemental Complaints, there is no basis for Defendants and Defendant-Intervenor to claim that granting the motion at hand would cause confusion, and certainly no compelling argument that any such contrived confusion could possibly rise to the level of prejudice. This is merely notice pleading, and allowing Plaintiffs to file the Supplemental Complaint would in no way "force Defendants and the Court to wade through multiple documents to evaluate Plaintiffs' claims and allegations" in a manner that would cause prejudice, or to have to "cobble together" the clearly defined claims in the Initial and Supplemental Complaints. Def-Int. at 5. Nor do they explain how the make-work exercise of combining the documents into one amended complaint would resolve any supposed confusion and allay any purported prejudice. The parties, factual allegations, and legal claims at issue in this litigation are readily apparent, and Defendants and Defendant-Intervenor have not carried their burden to show any actual, specific prejudice that would make it difficult for the parties to move forward with these matters through summary judgment briefing.

Defendants' and Defendant-Intervenor's arguments regarding the administrative record are likewise unfounded and unsupported. Defendants suggest that a supplemental complaint would require the FAA to lodge a separate record that would be duplicative of the existing record, but that an amended complaint would somehow cure that and would simply require FAA to supplement the existing administrative record. Def. at 4. Defendant-Intervenor likewise argues

that it is "unclear whether Plaintiffs are challenging different actions that must be evaluated based on separate administrative records." Def-Int. at 5. This is groundless. Defendants cite no authority suggesting that a duplicative record would be necessary for a supplemental complaint. Rather, consistent with filing a "supplemental" complaint, the government need only file the "supplemental" records encompassing the documents underlying the claims in the Supplemental Complaint—i.e., the documents bearing (1) on FAA's decision not to prepare a new NEPA document in the aftermath of the April launch, and (2) the FWS's Biological Opinion Addendum. There is nothing remotely complicated about that and any issues concerning specific materials can be addressed by the parties in the meet and confer process—as occurred satisfactorily for the record underlying the original claims. In any event, none of this has anything to do with whether Plaintiffs should be permitted to file a supplemental Complaint, as authorized by Rule 15(d).

In sum, Plaintiffs have followed the applicable Rules of Civil Procedure and this Court's precedent. The new claims have been properly set forth in a supplemental complaint as they are undoubtedly based on events that occurred after the case was filed, and no party has shown any real prejudice or provided any valid basis for genuine confusion as to the claims at issue in this litigation—particularly since Plaintiffs' claims will be further spelled out in their opening summary judgment brief, and Defendants and Defendant-Intervenor will be able to raise whatever merits arguments they wish in response. The motion to supplement should thus be granted.

### C.  Defendant-Intervenor's Argument that Plaintiffs' Claim Against FWS Requires 60-days Advance Notice Conflicts with Supreme Court Precedent and is Otherwise Groundless.

The government advances no argument that Plaintiffs cannot pursue their claim against

FWS due to the ESA's 60-day notice requirement. Defendant-Intervenor's argument to that

effect is wrong for multiple reasons.

### 1.  Defendant-Intervenors' Argument Conflicts with the Supreme Court's Ruling in *Bennett v. Spear*.

To begin with, the Supreme Court held in *Bennet v. Spear* that claims brought against the

Services for "maladministration" of the ESA—and specifically a challenge to FWS's issuance of

a Biological Opinion under Section 7—are brought pursuant to the APA and are *not* ESA citizen

suit claims. *Bennett v. Spear*, 520 U.S. 154, 174 (1997) (explaining that any claim against the

expert agency alleging its biological opinion violates the ESA must be brought under

the APA cause of action). And it is well-settled that the ESA notice requirement "extends only to

the citizen suit provision" and does not "preclude filing of a complaint alleging non-ESA claims"

without providing such notice, even if those non-ESA claims relate to the agency's review of a

biological opinion under the ESA. *All. for the Wild Rockies v. U.S. Dept. of Agric.*, 772 F.3d 592,

602-03 (9th Cir. 2014).[4] Here, Plaintiffs' Supplemental Complaint does not raise an ESA claim

for which notice was required, but rather raises a distinct claim challenging FWS' addendum to

---

[4] Other courts have agreed. *See e.g. Strahan v. Linnon*, 967 F. Supp. 581 (D. Mass. 1997) (applying *Bennett v. Spear* to find that the citizen suit provision of the ESA provides no basis for challenging a biological opinion, but that such claims are reviewable under the APA); *Greenpeace v. Nat'l Marine Fisheries Serv*., 55 F. Supp. 2d 1248, 1258 (W.D. Wash. 1999) ("challenges to Biological Opinions issued pursuant to ESA section 7. . .  are reviewed under the Administrative Procedures Act"); *Am. Rivers v. Nat'l Marine Fisheries Serv.,* 126 F.3d 1118, 1124 (9th Cir. 1997) ("Actions brought under the Administrative Procedures Act do not require the sixty-day notice requirement set forth in the Endangered Species Act. Therefore, failure to provide such notice does not deprive the court of jurisdiction to entertain such claims.").

the BiOp under the APA, as *Bennet* requires. *See Oceana, Inc. v. Ross*, 2020 U.S. Dist. LEXIS 188328, \*19, 2020 WL 5995125 (D.D.C. Oct. 9, 2020) (citing *Bennet* for the proposition that a "BiOp constitutes final agency action subject to judicial review under the Administrative Procedure Act"). And no party disputes that Plaintiffs' APA claim does not require notice. Therefore, controlling precedent dictates that Plaintiffs have not violated the 60-day notice requirement, as no such notice was required to bring the Second Supplemental Claim for Relief against FWS.

And not only have Plaintiffs properly brought their claim against FWS pursuant to the APA, but they have also only sought relief for that claim *against FWS*, contrary to Defendant-Intervenor's contorted attempt to reframe this as an ESA claim against FAA. That is evident from the Prayer for Relief, which specifically requests, with regard to the BiOp Addendum, that the Court "[d]eclare that FWS' BiOp addendum is arbitrary and capricious," and that the Court "[v]acate FWS' BiOp addendum and remand the BiOp addendum to FWS." ECF No. 27-1 at 26. There is nothing in the Prayer for Relief suggesting that Plaintiffs intend to seek relief against FAA regarding the BiOp addendum, and Defendant-Intervenor's assertion (at 7) that the boilerplate catchall request for "other such relief as the Court deems just and appropriate" can somehow be used to infer that Plaintiffs intend to seek specific relief against FAA under the ESA is unsupported and illogical given the plain language of the Complaint.[5]

---

[5] Defendant-Intervenor points to the paragraph 16 of the introduction to Plaintiffs' Supplemental Complaint as evidence that Plaintiffs seek to vacate the FAA's decision to approve the Starship/Superheavy launch program based on violations of the ESA. Def-Int. at 7. But that language does not support its position. That paragraph simply summarizes what Plaintiffs are seeking in the Supplemental Complaint, which includes vacatur of the BiOp Addendum based on the claim brought pursuant to the APA, consistent with the specific language in the Prayer for Relief.

The mere fact that allegations in the Supplemental Complaint touch on actions by the FAA, *see* Def-Int. at 8, cannot possibly convert Plaintiffs' clear APA claim into an ESA citizen suit claim requiring 60-day notice. For example, that the Supplemental Complaint discusses the fact that FAA entered into consultation with FWS in 2021, and that the April 20 launch resulted in harm to listed species, does not somehow convert what is a clear APA claim brought against FWS into a covert ESA citizen claim against FAA. *Contra* Def-Int. at 8.[6] Thus, far from attempting to "repackage" an ESA citizen suit claim as an APA claim, Def-Int. at 6, Plaintiffs are properly pleading their claim against FWS for its failure to comply with the law when it issued the BiOp addendum, and it is Defendant-Intervenor's attempt to "repackage" that claim which should be disregarded.

Accordingly, this case is entirely unlike *Washington Toxics Coalition v. EPA*, contrary to the confused argument made by Defendant-Intervenor (at 9). There, the federal agency had failed to consult in the first instance, and therefore the plaintiffs' claim could *only* be brought against the action agency for failing to comply with Section 7, which the Court correctly found to be an ESA citizen suit claim. *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1028, 1034 (9th Cir. 2005). No claim was brought against FWS, since consultation had not occurred and no BiOp had been produced. That is not the situation here. As in *Bennet*, FWS *did* produce a BiOp (and BiOp

---

[6] While Plaintiffs' July 12, 2023, notice letter to FAA and FWS does state that Plaintiffs would seek to enjoin SpaceX's launch license pending compliance with ESA Section 7, *see* Def-Int. at 8, that statement was brought in the context of a failure to reinitiate consultation claim, which *is* an ESA citizen suit claim that Plaintiffs would have brought, had it been necessary, against both FAA and FWS. But since the agencies did reinitiate consultation, the final agency action at issue then became the FWS' BiOp addendum, which Plaintiffs may *only* challenge pursuant to the APA, and which clearly does not necessitate 60-day notice. *See Center v. Simpson Timber Co.*, 255 F.3d 1073, 1079 (9th Cir. 2001) (under *Bennett*, FWS "could not be sued for maladministration of the ESA" under the citizen-suit provision—those claims fall under the APA).

Addendum), and a challenge to the adequacy of that BiOp Addendum must be brought against FWS under the APA pursuant to *Bennet* and consistent with this Court's precedent. *See Nat'l Wildlife Fed'n v. Norton*, 332 F. Supp. 2d 170, 188 (D.C.D. 2004) (declaring a Biological Opinion invalid "in violation of the Administrative Procedure Act" and remanding to FWS for reconsideration).

Further, just as in *Bennet*, relief against FWS setting aside the BiOp Addendum would provide redress for harms to Plaintiffs' interests. Indeed, in *Bennett*, the Supreme Court rejected a standing challenge when the plaintiffs had *only* sued the FWS under the APA and had brought no claims at all against the action agency. *See Bennett*, 520 U.S. at 157, 174-78 (discussing standing for plaintiffs' APA challenge against FWS). Likewise, here, vacating and remanding the BiOp Addendum to FWS would force the agency to fully consider and analyze the harm from the April 20 explosion, potentially leading to FWS's consideration of additional mitigation to address those impacts and/or additional protective measures for listed species that Plaintiffs seek to protect, thereby providing sufficient redress to meet the applicable standing requirement as in *Bennett* itself. *Contra* Def-Int. at 8.[7]

---

[7] Defendant-Intervenors (at 8) summarily suggest—without supporting caselaw and absent a fully-formed argument—that Plaintiffs would lack standing if they disclaimed relief against the FAA for the Second Supplemental Claim for Relief. There is no need for the Court even to address this toss-off argument at this stage, especially since Defendant-Intervenors will be free to raise any argument they wish in summary judgment briefing. In any case, Plaintiffs clearly do have standing to bring their claim against FWS. Plaintiffs' Supplemental Complaint specifies that the SpaceX activities at Boca Chica are harming their interests, particularly in protecting ESA-listed species, ECF No. 27-1 at ¶ 20, and that FWS has the duty to ensure, through the Section 7 process, that the SpaceX Starship/Superheavy Launch Program will not jeopardize the continued existence of listed species or adversely modify critical habitat, *id.* at ¶ 22. Plaintiffs assert the agency has failed to do so in violation of the law. *See id.* at ¶¶ 90-95. As the Court has explained, "as long as the procedural requirement is designed to protect a threatened, concrete interest of the plaintiff, the violation is sufficient to grant the plaintiff standing." *San Juan Audubon Soc'y v. Wildlife Servs.*, 257 F. Supp. 2d 133, 137 (D.D.C. 2003) (citation omitted). Plaintiffs have therefore stated a "sufficiently concrete and imminent injury, tethered to the

While Plaintiffs' right to pursue an APA claim against FWS is squarely supported by precedent and the plain terms of the Complaint, Defendant-Intervenor's arguments are predicated on sheer conjecture that should have no bearing on whether supplementation of the complaint is allowed. Defendant-Intervenor assumes a hypothetical scenario, wherein Plaintiffs would seek relief against FAA for violations of the ESA contrary to the language of the Supplemental Complaint. But even if Plaintiffs were to do so in summary judgment briefing—which they have no intention of doing—Defendant-Intervenor would be free at that time to raise jurisdictional arguments regarding the lack of notice and/or standing; however, given that Plaintiffs' Supplemental Complaint on its face only seeks relief against FWS pursuant to a claim properly plead under the APA for which no notice is required—and for which Plaintiffs clearly have standing—Defendant-Intervenor has provided no legitimate basis for denying Plaintiffs' motion. In fact, Defendant-Intervenor ignores that this Court's precedent would allow the filing of the APA claim now, and an ESA citizen suit claim could be amended in at a later time following the provision of whatever notice might be necessary to pursue an ESA claim against FAA. *See All. for the Wild Rockies*, 772 F.3d at 602-03 (The ESA notice requirement "extends only to the citizen suit provision" and does not "preclude filing of a complaint alleging non-ESA claims before the 60-day notice period expires"). What is indisputable, however, is that any purported lack of notice to FAA cannot provide any basis for denying Plaintiffs the opportunity to bring their valid APA claim against FWS at this time.

---

alleged [ESA] violation, for the purposes of standing." *Del. Riverkeeper Network v. FERC*, 243 F. Supp. 3d 141, 151 (D.D.C. 2017). Regardless, Defendant-Intervenor has certainly failed to provide a sufficient argument to meet its burden of showing that the filing of the Supplemental Complaint would be "futile" due to standing concerns. *See Hettinga v. United States*, 677 F.3d 471, 480, 400 U.S. App. D.C. 218 (D.C. Cir. 2012) (addressing futility in the context of a supplemental complaint).

**2.   Even if Notice Was Required, Plaintiffs Provided It.**

Even if 60-day notice to FAA was required for Plaintiffs' APA claim against FWS, which it clearly is not, Plaintiffs satisfied that requirement when they submitted a notice letter to the agencies on July 12, 2023, regarding their need to reinitiate Section 7 consultation.[8] *See* Ex. A to Decl. of T. Welti, ECF No. 31-1. That letter put the FAA and FWS on notice that they needed to reinitiate consultation following the April 20, 2023, launch event that resulted in the explosion of the launch pad, "which ejected chunks of concrete thousands of feet into the sensitive tidal flats and outside the debris study area relied on in the Service's Biological Opinion, as well as the associated noise and an extensive dust plume covering many miles, demonstrate[ing] that the potential harm from these launches far exceeds what FWS considered when reviewing the proposal for 20 such launches over the next 5 years." *Id.* at 5.

Importantly, that letter specified that the reinitiated consultation must consider the impacts of the April 20 launch event, including "more debris falling within habitat for listed species than was contemplated in the BiOp, including in areas outside of the debris study area," as well as "new information bearing on the impacts to listed species includ[ing] potentially higher than expected noise levels and/or the inability of the Service to adequately measure the sound from launch events; a plume of pulverized concrete covering a large area (as far as 6.5 miles from the launch site), which may have resulted in adverse impacts to listed species; the inexplicable closure of the Boca Chica area for more than 48 hours, which prevented the Service from conducting a timely appraisal of the impacts of the anomaly on listed species; and new infrastructure or other changes to the launch facility in response to the event," stating that

---

[8] A notice letter was provided because a failure to reinitiate consultation claim *is* an ESA citizen suit claim, unlike the APA claim at issue in Plaintiffs' Supplemental Complaint against FWS for its arbitrary and capricious review that resulted from the reinitiated consultation.

"[t]hese issues, and any other impacts of the April 20 Starship launch failure, must be fully analyzed by FWS through a reinitiated Section 7 consultation." *Id*. at 6.

Thus, Plaintiffs' letter put the parties—and specifically the Federal Defendants—on notice that if the reinitiated consultation did not cover these issues, it would not be in compliance with the law. And while Plaintiffs' July 12, 2023, notice letter pertained to the need to reinitiate consultation, which the FAA subsequently did, that does not mean it did not also provide notice regarding the Second Supplemental Claim for Relief. It is well-settled that the 60-day notice requirement is met where the complaining party identifies the legal violation and "provide[s] sufficient information . . . so that the [notified parties] could identify and attempt to abate the violation." *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015) (citing *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 522 (9th Cir. 1998); *Pub. Interest Research Grp. of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1249 (3d Cir. 1995)). A citizen "is not required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002) (quoting *Hercules*, 50 F.3d at 1248). Rather, the analysis turns on the "overall sufficiency" of the notice. *Id.; see also Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996) (examining "the letter as a whole" for sufficiency of notice).

Plaintiff's Notice Letter fulfills this mandate. It made clear that Plaintiffs intended to bring suit against the agencies if they did not fully consider the impacts of the April 20 launch event through a reinitiated consultation, including issues regarding debris, noise levels, closures, and changes made to the launch program as a result of the explosion—which are the exact issues as those set forth in the proposed Supplemental Complaint that form the basis for the APA claim

against FWS for its arbitrary and capricious review in the addendum to the BiOp. *See*

Supplemental Complaint, ECF No. 27-1 at ¶¶ 89-95 (Second Supplemental Claim for relief

specifying that FWS violated the APA by not analyzing the destruction of the launch pad, the

impacts of debris and debris removal, excessive noise, and changes to the launch program –

specifically the implementation of a deluge water system). Therefore, even though notice to FAA

is not required for Plaintiffs' APA claim against FWS, Plaintiffs *did* provide sufficient notice

such that the FAA was made aware that the failure to consider these issues would be a legal

violation, and Defendant-Intervenor's arguments are without merit. *See Klamath-Siskiyou*

*Wildlands Ctr.*, 797 F.3d at 651 (the "key issue" is "whether the notice provided information that

allowed the defendant to identify and address the alleged violations, considering the defendant's

superior access to information about its own activities").[9]

---

[9] Although it is immaterial to the resolution of Plaintiffs' motion, Defendant-Intervenor's reference to the 60-day notice requirement as "jurisdictional," Def-Int. at 6, conflicts with recent Supreme Court precedent. The notice requirement is not strictly "jurisdictional" under the "clear statement" test articulated by the Court in *Arbaugh v. Y&H Corp*., 546 U.S. 500, 516 (2006). The Court "has endeavored in recent years to 'bring some discipline' to the use of the term 'jurisdictional.'" *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)) and, recognizing the "less than meticulous use of the term in the past," it has "pressed a stricter distinction between 'truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not." *Gonzalez*, 565 U.S. at 141 (citation omitted). Recent Supreme Court cases have therefore articulated a "readily administrable bright line" test: statutory requirements are jurisdictional only if Congress "clearly states" so. *Arbaugh*, 546 U.S. at 516; *Wilkins v. United States*, __ U.S. __, 143 S. Ct. 870, 876 (2023). Under this "clear statement" test, several circuit courts have recently held that pre-suit notice requirements are *not* jurisdictional. *See Grp. Against Smog & Pollution, Inc. v. Shenango Inc.,* 810 F.3d 116, 125 (3d Cir. 2016) (notice provision of the Clean Air Act is not jurisdictional); *La. Env't Action Network v. City of Baton Rouge*, 677 F.3d 737, 748 (5th Cir. 2012) (notice requirement of the Clean Water Act is not jurisdictional); *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 72 (1st Cir. 2021) (same). While these cases involve different environmental statutes, they are nonetheless instructive because the ESA's notice requirement is "nearly identical." *Lockett v. E.P.A.*, 319 F.3d 678, 682–83 (5th Cir. 2003). If, as this precedent suggests, the notice requirement is not jurisdictional, its invocation as a defense can be waived by the party that would otherwise be entitled to receive it (i.e., in this case FAA, which has not joined Defendant-Intervenor's notice argument). Given the more straightforward

**CONCLUSION**

For the foregoing reasons and those set forth in Plaintiffs' motion, the Court should permit Plaintiffs to file the Supplemental Complaint.

Respectfully submitted this 17th day of January, 2024,

/Jared Margolis
Jared M. Margolis (*pro hac vice*)
Center for Biological Diversity
2852 Willamette St. # 171
Eugene, OR 97405
Tel: (802) 310-4054
Email: jmargolis@biologicaldiversity.org
*Counsel for Plaintiffs*

---

reasons for rejecting Intervenor's 60-day notice arguments, the Court need not enter this thicket, but Defendant-Intervenor's reference to the requirement as "jurisdictional" should not be taken at face value.