**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL
DISVERSITY, *et al.*,
        Plaintiffs,

v.

FEDERAL AVIATION
ADMINISTRATION, *et al.*,
        Defendants,

and

SPACE EXPLORATION
TECHNOLOGIES CORP.,
        Intervenor-Defendant.

Civil Action No. 1:23-cv-1204-CJN

**INTERVENOR-DEFENDANT SPACE EXPLORATION TECHNOLOGIES
CORP.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ..................................................................................................................... 2

    A.    Plaintiffs admit that they allege three separate NEPA violations; SpaceX is moving to dismiss two of them. ............................................................................. 2

    B.    Because Plaintiffs have clarified that they do not seek relief under the MBTA, that issue need not be addressed. ...................................................................... 3

    C.    Because the decision approving SpaceX's launch program was complete when the FAA made it, Plaintiffs cannot state a NEPA supplementation claim challenging that action. ....................................................................................... 4

        1.    Any NEPA supplementation claim must be tied to a specific, proposed agency action. ..................................................................................... 4

        2.    The FAA's decision approving SpaceX's launch program was complete as soon as it was made. ................................................................ 5

        3.    Plaintiffs cannot independently challenge the written reevaluations for later, separately licensed launches. ................................................ 8

III. CONCLUSION ................................................................................................................. 10

## **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Aberdeen & Rockfish R.R. Co. v. SCRAP*,
    422 U.S. 289 (1975)..................................................................................................4

*Dep't of Transp. v. Pub. Citizen*,
    541 U.S. 752 (2004)..................................................................................................4

*Friends of the Clearwater v. Dombeck*,
    222 F.3d 552 (9th Cir. 2000) ....................................................................................8

*Karst Env't Educ. & Prot., Inc. v. EPA*,
    475 F.3d 1291 (D.C. Cir. 2007)............................................................................8, 9

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989)...............................................................................................4, 7

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)..................................................................................................6

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004).............................................................................................passim

*Ouachita Watch League v. U.S. Forest Serv., No. 4:11CV00425 JM, 2016 WL
    3511691* (E.D. Ark. Mar. 16, 2016), *appeal dismissed*, 858 F.3d 539 (8th Cir.
    2017) .........................................................................................................................8

*Sierra Club v. U.S. Dep't of Energy*,
    825 F. Supp. 2d 142 (D.D.C. 2011).........................................................................8

*W. Org. of Res. Councils v. Zinke*,
    892 F.3d 1234 (D.C. Cir. 2018)........................................................................passim

**Federal Statutes**

5 U.S.C. § 706...................................................................................................................6

42 U.S.C. § 4332(C) .........................................................................................................4

**Other Authorities**

40 C.F.R. § 1501.3(d)(2)(iii)............................................................................................3

## I.   INTRODUCTION

Plaintiffs' response to SpaceX's motion to dismiss narrows the issues. To start, Plaintiffs clarify that the single count in their Amended Complaint actually alleges three separate NEPA violations: (1) a claim that the FAA should have done more NEPA review before it "approved the Starship/Superheavy launch program" in June 2022; (2) a claim that the FAA should have prepared "a new or supplemental NEPA analysis" to account for alleged harms from SpaceX's April 2023 launch; and (3) a claim that "new information" about harm to migratory birds after SpaceX's June 2023 launch demands "a supplemental NEPA review." ECF 39, Opp. at 5-6. Plaintiffs also clarify that they are not bringing a claim for violation of the Migratory Bird Treaty Act (MBTA). *Id.* at 4, 14. Based on these clarifications, SpaceX seeks dismissal of Plaintiffs' second and third claims, even though Plaintiffs lump all three claims together in a single count.

After Plaintiffs' response, the question before the Court is whether Plaintiffs can force the FAA to supplement its Programmatic Environmental Assessment (EA) based on events that post-date the agency's approval of SpaceX's launch program. Under Supreme Court and D.C. Circuit precedent, the answer is no. That precedent explains that when an agency uses individual "management decisions" to "implement" an overarching plan, those decisions "are distinct from the plan itself." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 69 (2004). The plan's approval is a separate agency action that "is completed when the plan is approved." *Id.* at 73. And even when that "plan continue[s] to govern" later actions, NEPA does not require agencies to supplement their environmental review of the already-approved plan. *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1243 (D.C. Cir. 2018).

Plaintiffs' accusation that SpaceX seeks to make it "impossible to challenge the FAA's failure to comply with NEPA," Opp. at 13-14, misses the mark. SpaceX does not seek to dismiss

1

Plaintiffs' claim that the FAA violated NEPA when it approved SpaceX's overall launch plan—Plaintiffs can still challenge the Programmatic EA supporting that plan-approval action. SpaceX seeks to dismiss Plaintiffs' effort to compel supplementation of a programmatic NEPA review for a completed agency action based on information that arose years after the agency acted. Nor can Plaintiffs challenge the NEPA reviews for later launches without challenging the FAA's decisions to license those launches. In short, SpaceX's motion to dismiss is not directed at Plaintiffs' NEPA challenge to the FAA's approval of the Starship-Super Heavy launch plan, but rather at the other claims described in Plaintiffs' opposition.

## II.   ARGUMENT

The key facts are not in dispute. Plaintiffs agree that the FAA prepared a Programmatic EA in support of its decision to "approve[] the Starship/Superheavy launch program," which involves construction of new launch-related infrastructure at the existing Boca Chica launch site and up to ten launches per year. Opp. at 5; *see* Am. Compl. ¶¶ 3, 28, 61, 77, 120 (all referring to the FAA's review and approval of SpaceX's launch "program"). They also admit that each launch under that program has required a separate FAA licensing action. Opp. at 4, 7, 11 (referring to the separate licensing actions); *see* Am. Compl. ¶¶ 3, 94, 101 (same). Because those facts show that the FAA's programmatic decision is distinct from its decisions implementing the program, and that its programmatic decision is complete, Plaintiffs' NEPA supplementation claims must fail.

### A.  Plaintiffs admit that they allege three separate NEPA violations; SpaceX is moving to dismiss two of them.

SpaceX's opening memorandum pointed out that Plaintiffs' one-count complaint was actually making separate claims under Rule 10(b) and argued that SpaceX should be allowed to seek partial dismissal. *See* ECF 38-1, SpaceX Mem. at 8-10. Plaintiffs concede this point. They even agree with SpaceX's characterization of the "three NEPA violations" that they are alleging. Opp.

2

at 18. In Plaintiffs' words, their first alleged NEPA violation concerns the FAA's "failure to produce an EIS when" it "approved the Starship/Superheavy launch program." *Id.* at 5. The second and third alleged violations, by contrast, involve the FAA's failure to conduct "new or supplemental" NEPA review based on evidence not available when the FAA approved the launch program. *Id.* at 5-6. SpaceX moves to dismiss the second and third claims, by which Plaintiffs seek to reopen the NEPA review and approval of SpaceX's launch program.

### B. Because Plaintiffs have clarified that they do not seek relief under the MBTA, that issue need not be addressed.

SpaceX's memorandum also argued that its launch activities do not violate the MBTA because that law does not apply to unintentional, incidental harm to migratory birds. *See* SpaceX Mem. at 13-22. Plaintiffs now say, however, that they "have not brought a separate claim under the MBTA." Opp. at 14; *see id.* at 4. Since Plaintiffs admit that they are not bringing a claim under the MBTA, no ruling on SpaceX's MBTA arguments is needed.

Even so, Plaintiffs do seem to say that SpaceX's alleged violations of the MBTA are part of their NEPA claims. *Id.* at 15-16. Their Amended Complaint focuses on one Starship-Super Heavy launch that reportedly harmed several migratory bird eggs and argues that such a violation of the MBTA requires preparation of an Environmental Impact Statement. Am. Compl. ¶¶ 123-24; *see* 40 C.F.R. § 1501.3(d)(2)(iii) (identifying "[w]hether the action may violate relevant Federal . . . laws" as a "significance factor" that supports preparation of an Environmental Impact Statement). But because the MBTA does not govern harm to migratory birds that is incidentally caused by SpaceX's commercial activities, Plaintiffs' MBTA-based NEPA claim fails as a matter of law. *See* SpaceX Mem. at 13-22.

3

### C. Because the decision approving SpaceX's launch program was complete when the FAA made it, Plaintiffs cannot state a NEPA supplementation claim challenging that action.

Plaintiffs' opposition to the dismissal of their NEPA supplementation claims rests on a misperception of the statute. As Plaintiffs see it, NEPA imposes an ongoing duty to supplement any NEPA document still in use. Opp. at 7-11. But that is not how NEPA works. NEPA requires environmental review only of specific, proposed "major federal actions." 42 U.S.C. § 4332(C). Once an action is complete, as happened when the FAA approved SpaceX's launch program, the agency's NEPA obligations end.

#### 1. Any NEPA supplementation claim must be tied to a specific, proposed agency action.

"NEPA imposes only procedural requirements on federal agencies with a particular focus on requiring agencies to undertake analyses of the environmental impact of their proposals and actions." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756-57 (2004). This focus on an agency's "proposals and actions" means that every NEPA review "first" must "describe accurately the 'federal action' being taken." *Aberdeen & Rockfish R.R. Co. v. SCRAP*, 422 U.S. 289, 322 (1975).

The same rules apply to supplementation of a NEPA review. Because the point of any NEPA review is to help an agency weigh potential future environmental effects before it acts, the agency must consider new information only "[i]f there remains 'major Federal action' to occur." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 374 (1989) (quoting 42 U.S.C. § 4332(2)(C)) (brackets omitted). When an action is complete, an agency has no duty to supplement the NEPA review for that action. *See Norton*, 542 U.S. at 72-73.

Plaintiffs seek to distinguish the Supreme Court's decision in *Norton* and the D.C. Circuit's parallel decision in *Zinke* as involving "a general plan for managing resources." Opp. at 8. But the presence of a resource management plan is not why those courts declined to require supplemental

4

NEPA review. Rather, those cases turned on the courts' conclusion that the agency was taking *distinct* actions—first approving, then implementing, a plan.

The Supreme Court explained in *Norton* that an agency's "management decisions to implement land use plans" were "distinct from the plan itself." 542 U.S. at 69 (citation omitted). Each of these distinct agency decisions is subject to NEPA. And because the agency's decision to approve the management plan was "completed when the plan [was] approved," the later, "distinct" agency actions to "implement" the plan did not "require supplementation" of the NEPA review for the already-completed plan approval. *Id.* at 73. NEPA instead requires that for each distinct action "taken as part of a program," the agency must study the "incremental impacts" that distinct action may cause. *Zinke*, 892 F.3d at 1238.

### 2. The FAA's decision approving SpaceX's launch program was complete as soon as it was made.

The same sorts of distinct agency actions are at issue here. SpaceX proposed an entire launch program for its Starship-Super Heavy vehicle, including up to ten launches annually and the construction of more launch-related infrastructure. PEA at 11-12; *see* Am. Compl. ¶¶ 3, 61. The FAA reviewed that program using a Programmatic EA. PEA at 1-2. But the FAA's review also recognized that SpaceX could not launch its vehicle without a "new or modified" license for each launch. *Id.* at 1.

Plaintiffs do not deny that SpaceX needed—and obtained—specific license modifications for each Starship-Super Heavy launch. *See* Opp. at 4, 7, 11 (referring to the separate licensing actions); *see* Am. Compl. ¶¶ 3, 94, 101 (same). But they still try to characterize the FAA's decision on the overall launch program as "the approval of a specific plan to launch specific rockets," as if no further approvals were necessary. Opp. at 9. They base this contradictory claim on the fact that the FAA relied on its Programmatic EA when conducting its NEPA review for each proposed

5

launch decision. *Id.* at 10-11. So, in Plaintiffs' way of thinking, the FAA must continue to supplement the Programmatic EA as long as it is "continuing to rely on" that document. *Id.* at 11.

Plaintiffs are wrong because the duty to supplement a NEPA review does not arise from the potential future use of that review for later, distinct actions. Far from it: NEPA actually encourages agencies to continue using their NEPA reviews for completed decisions by "tiering" later NEPA analyses to earlier ones. *Zinke*, 892 F.3d at 1237. Often, this involves first preparing a broader NEPA review for an entire program, then approving that program, then later building on the "programmatic analysis" for "each specific action taken as part of [the] program." *Id.* at 1237-38.

This tiering process does not require the NEPA review for the original, approved program to be supplemented each time an agency relies on it in taking a distinct action—even when that action is part of the original program. *See Zinke*, 892 F.3d at 1243. As the D.C. Circuit explained, the larger "plan" may "continue[] to govern actions that took place after the [plan's] approval" without "render[ing] the original action incomplete." *Id.* And since the original action approving the plan is complete, the agency has no duty to supplement its NEPA review for that original action. *Id.*; *see Norton*, 542 U.S. at 73. By the same token, it does not matter that "new information" is available and "further agency action is forthcoming." Opp. at 13. Future actions cannot be challenged until they are taken. 5 U.S.C. § 706; *see Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 164 (2010) (explaining that "a hypothetical future [agency] decision" can be challenged "if and when such a decision is made").

The undisputed facts here show that the FAA's action approving SpaceX's Starship-Super Heavy launch program was complete as soon as the agency issued its June 2022 record of decision. Since then, the FAA has taken a new, distinct licensing action each time it authorized a specific

6

Starship-Super Heavy launch. *See* SpaceX Mem. at 6-7 (describing the environmental review and licensing processes for each of SpaceX's first four launches). And each of those licensing actions has been supported by its own NEPA record—usually a written reevaluation, but in one case an environmental assessment. *See id.* That those license-specific NEPA reviews built on—*i.e.*, were "tiered" to—the FAA's Programmatic EA does not suggest that the FAA's original decision approving SpaceX's launch program is incomplete. Nor do the written reevaluations' references to reviewing the Programmatic EA's continued validity say anything more than what would be expected from an agency that is tiering from an earlier EA. *Contra* Opp. at 11-12 (quoting Nov. 12, 2023 Written Reevaluation at 1-2).

Plaintiffs think this case is more like the Supreme Court's decision in *Marsh*, where the project at issue was the ongoing construction of a federal dam by the U.S. Army Corps of Engineers. 490 U.S. at 363-64, 368. But because the dam in *Marsh* was Corps-built and only one-third complete, it qualified as an ongoing major federal action. *Norton*, 542 U.S. at 73; *Marsh*, 490 U.S. at 374 (referring to the "still pending decisionmaking process"). Here, by contrast, the Programmatic EA was prepared for the FAA's approval of SpaceX's launch program. The launches themselves are both separately approved and privately conducted.

In sum, the FAA has no duty to supplement an EA that supports a completed decision. *Norton*, 542 U.S. at 73; *Zinke*, 892 F.3d at 1243. Here, the FAA's 2022 decision approving SpaceX's launch program was complete as soon as it was made. Plaintiffs waited almost a year to challenge that decision and its NEPA review, and they now seek to force the FAA to reopen both the decision and the NEPA review based on information that arose well after they were complete. More broadly, Plaintiffs want an impossibly burdensome NEPA process under which decisions must be reopened every time a new piece of information surfaces. Such a Sisyphean charge would

grind the national space program to a halt. Because the decision approving SpaceX's launch program is complete, Plaintiffs' effort to force supplementation of the Programmatic EA prepared in support of that completed launch program decision should thus be dismissed.

### 3. Plaintiffs cannot independently challenge the written reevaluations for later, separately licensed launches.

As a backup, Plaintiffs argue that even if they cannot seek supplementation of the Programmatic EA, their Amended Complaint "expressly challeng[es] the November 12, 2023 Written Reevaluation *itself*" under the Administrative Procedure Act. Opp. at 12 (emphasis in original). This argument reflects another misunderstanding of NEPA.

When a plaintiff thinks an agency has violated NEPA, it does not challenge the NEPA review "*itself*." Instead, as Plaintiffs admit, NEPA claims must be brought under the Administrative Procedure Act as challenges to a "final agency action." *Karst Env't Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1295 (D.C. Cir. 2007); *see* Opp. at 6 n.2 (acknowledging that "because NEPA itself does not provide for a cause of action, NEPA claims are properly brought under the APA"). And since the mere preparation of a written reevaluation does not "mark the consummation of the agency's decisionmaking process," it is not final agency action. *See Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 156 (D.D.C. 2011) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)); *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 559-61 (9th Cir. 2000) (explaining that a supplemental information report, prepared to evaluate the need to prepare a new or supplemental NEPA document, was merely used to support a separate agency action); *Ouachita Watch League v. U.S. Forest Serv.*, No. 4:11CV00425 JM, 2016 WL 3511691, at *3 (E.D. Ark. Mar. 16, 2016), *appeal dismissed*, 858 F.3d 539 (8th Cir. 2017) (holding that a document prepared to "analyze whether [an agency] should supplement" a prior NEPA review "was not a final agency action which can be challenged by Plaintiffs under section 706(2)").

8

The upshot is that Plaintiffs can challenge the November 2023 written reevaluation only by challenging the final agency action—an individual launch license—that went along with it. Plaintiffs studiously avoid saying that they have made any such challenge to SpaceX's individual launch license modifications in their Amended Complaint.* Plaintiffs' even vaguer complaint about "harm" to migratory bird nests and eggs has the same flaw. Opp. at 13. Even if these alleged harms qualified as new information, there is no cause of action under the APA for "supplementation" of an environmental review apart from a final agency action. Because the only final agency action at issue in the Amended Complaint is the FAA's 2022 approval of SpaceX's entire launch program, and the FAA cannot be forced to supplement its environmental review for that completed action, Plaintiffs' NEPA supplementation claims fail.

Plaintiffs call this precedent-based logic a "thinly veiled attempt to paint [them] into a corner, making it impossible to challenge the FAA's failure to comply with NEPA." Opp. at 13-14. But SpaceX is doing no such thing. SpaceX is not moving to dismiss Plaintiffs' claim that the FAA should have prepared an Environmental Impact Statement when it approved the overall Starship-Super Heavy launch program. *See id.* at 5. The administrative record for that claim has already been produced, leaving it ready for resolution on summary judgment. *See id.* at 7 n.4. SpaceX is just trying to clear the underbrush from this case by eliminating NEPA supplementation claims that cannot proceed under the Supreme Court's decision in *Norton* and the D.C. Circuit's decision in *Zinke*. Otherwise, Plaintiffs could keep amending their complaint, adding new

---

* It is far from clear that Plaintiffs could challenge an already-completed launch on NEPA grounds. To do so, they would first have to "identify some 'agency action' that adversely affects them." *Karst*, 475 F.3d at 1295 (brackets omitted). Perhaps for that reason, their opposition talks in terms of "a legal violation of NEPA as it pertains to the FAA's NEPA review for the second launch license," Opp. at 4, but stops short of challenging the FAA's licensing decision. *See also id.* at 13 (arguing that Plaintiffs can challenge "the *conclusion* in the [Written] Reevaluation" (emphasis in original)).

9

"supplementation" claims every time a new tidbit of new information comes to light, while never addressing their core NEPA claim against the overall launch program—a messy possibility that illustrates why such program approvals are not subject to supplementation challenges.

\* \* \*

This case should be simple. Plaintiffs think that the FAA should have done more environmental review before approving SpaceX's Starship-Super Heavy launch program. They have stated a claim to that effect, and that claim is ready for summary judgment briefing. But Plaintiffs want to bolster their claim by relying on evidence that postdates the FAA's launch program approval. To that end, their Amended Complaint argues that the FAA must "supplement" its NEPA review. The problem with that argument is that the FAA's decision to approve SpaceX's launch program was complete as soon as it was made. And both the U.S. Supreme Court and the D.C. Circuit recognize that agencies have no duty to supplement a NEPA review for a completed agency action. Plaintiffs' NEPA supplementation claims should thus be dismissed.

### III. CONCLUSION

Plaintiffs' NEPA supplementation claims should be dismissed with prejudice.

Dated: October 9, 2024                                  Respectfully submitted,

/s/ Tyler G. Welti
Tyler G. Welti (D.C. Bar No. 1015691)
VENABLE LLP
101 California St. Suite 3800
San Francisco, CA 94111
Phone: 415-653-3714
Fax: 415-653-3755
tgwelti@venable.com

Jay C. Johnson (D.C. Bar No. 487768)
VENABLE LLP
600 Massachusetts Ave., N.W.

        Washington, DC 20001
        Phone: 202-344-4698
        Fax: 202-344-8300
        jcjohnson@venable.com

*Attorneys for Intervenor-Defendant Space Exploration Technologies Corporation*