# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>FEDERAL AVIATION ADMINISTRA-TION, *et al.*,<br>　　　　　　　Defendants,<br><br>　　and<br><br>SPACE EXPLORATION TECHNOLOGIES CORP.,<br>　　　　　　　Intervenor-Defendant. | Civil Action No. 1:23-cv-1204-CJN |

**INTERVENOR-DEFENDANT SPACE EXPLORATION TECHNOLOGIES CORP.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**

## INTRODUCTION

Building on years of suborbital test launches, SpaceX began launching its revolutionary Starship launch vehicle from its privately owned Starbase facility in Texas in April 2023. Plaintiffs filed this case in May 2023 to challenge the Federal Aviation Administration's decision to approve SpaceX's original Starship launch program. That challenge, in substance, is a critique of the FAA's Programmatic Environmental Assessment (PEA) under the National Environmental Policy Act (NEPA). The case is now fully briefed, argued, and ready for a ruling.

In the meantime, the FAA prepared a new environmental review that builds on the PEA, then decided to modify SpaceX's launch license by increasing the number of Starship launches it allows. Plaintiffs object to that new decision. But rather than allow this case—involving a different decision made based on a different factual record—to reach a final ruling, Plaintiffs seek to amend their complaint by adding a challenge to the FAA's new decision authorizing an increased launch cadence.

If Plaintiffs' request to amend is granted, it will prejudice SpaceX by denying it finality on Plaintiffs' fully briefed challenge to the FAA's approval of a limited number of Starship launches and the supporting PEA, a document that undergirds other environmental review for Starship launches in Texas. Such lingering uncertainty makes it harder for SpaceX to fulfill its missions, including NASA's Artemis Program, which will use Starship to return Americans to the Moon for the first time in over fifty years. If Plaintiffs' request to amend is denied, on the other hand, no harm will come to them—they can just bring a new case with the same claims that they are trying to add here.

Because SpaceX will be prejudiced if Plaintiffs can prolong this case challenging the PEA supporting FAA's original licensing action—a ruling two-and-a-half years in the making, fully

briefed, and ready for adjudication—by now challenging a different licensing decision, their motion to amend should be denied.

## BACKGROUND

### A.    NEPA is just one input into judicial review of an agency decision.

Plaintiffs seek to amend their complaint to challenge a new licensing decision and associated environmental review that build on the PEA that is at issue in the pending summary judgment briefing.

Agencies use "programmatic environmental documents" like the PEA to help broadly and efficiently study "environmental effects" when they undertake a "policy, program, plan, or group of related actions." 42 U.S.C. § 4336e(11). This programmatic document lays a foundation for later decisions at the project level, allowing the agency to rely on the programmatic document for overarching issues and to focus its NEPA process on the specific impacts of each action. Such reliance on a programmatic review has long been known as "tiering," *see Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 511–12 (D.C. Cir. 2010), and the project-specific NEPA reviews are called "tiered EAs" or "tiered EISs."

Just because a tiered EA incorporates the larger, programmatic review does not mean that every new tiered EA is a new chance to challenge the original programmatic review. Rather, a tiered EA is a distinct document supporting a separate decision. As the Supreme Court's recent decision in *Seven County Infrastructure Coalition v. Eagle County* underscores, "NEPA imposes no *substantive* constraints on the agency's ultimate decision to build, fund, or approve a proposed project." *Seven Cnty.*, 145 S. Ct. 1497, 1511 (2025) (emphasis in original). The substantive question is instead whether the agency's *decision* "was reasonable and reasonably explained," which must be answered with the "substantial deference" owed to agency decisionmakers in mind. *Id.* at 1512 (citation omitted). In other words, it is the separate agency decision that is subject to judicial

review, with the NEPA review being "only one input into" that decision. *Id*. So each separate agency decision stands on its own record, of which documented NEPA review is one part. And, consistent with principles of finality, when a programmatic environmental document and decision have already addressed an issue, a tiered review and decision need not address that issue afresh. *See Theodore Roosevelt Conservation P'ship*, 616 F.3d at 511–12.

**B.    The FAA made a separate decision to allow more Starship launches.**

When SpaceX proposed orbital Starship launches from its Texas launch site, the FAA prepared a Programmatic EA that comprehensively considered the potential effects of SpaceX's proposed launch program. FAA11363 (PEA at 1). From the start, the FAA saw this PEA as a "general, broad NEPA review from which subsequent NEPA documents can be tiered"—meaning that the NEPA reviews for later launch decisions could start with the Programmatic EA, adding to it if needed. *Id.* at 1–2; *see id.* at S-1 ("If SpaceX modifies or adds operations as part of its Starship/Super Heavy program in the future, the FAA would analyze the environmental impacts of those activities in a tiered environmental document . . . .").

The PEA considers the environmental effects of up to five annual Starship suborbital launches and landings, up to five annual Starship orbital launches and landings, along with related construction and testing at the existing launch site. FAA11378–79 (PEA at 16–17). The result is over 1,000 pages of documentation that consider a wide range of potential environmental effects and concludes that, with mitigation, no effect is environmentally significant. FAA11354–536. The FAA used this detailed PEA as one input into its decision on SpaceX's proposed Starship launch program. *See* FAA10336 (ROD at 2).

Plaintiffs sued to challenge this decision, arguing that the Starship launches would have significant environmental effects that required the FAA to prepare an environmental impact

statement. *See* ECF 1, Compl. That challenge has now been fully briefed, was argued in July 2025, and is ready for a ruling.

Nearly three years after the FAA issued SpaceX's first Starship launch license, in April 2025, the agency separately decided to modify SpaceX's license, primarily by increasing the number of orbital launches and landings allowed each year. One input into this new decision was a Final Tiered Environmental Assessment that built on the 2022 PEA. Based on that analysis of the increased launch cadence, the FAA concluded that "no significant impacts would occur as a result of SpaceX's proposed action." 2025 Final Tiered EA at 72.[1]

Plaintiffs now seek to amend their complaint to challenge both the FAA's June 2022 decision and April 2025 decision, even though the challenge to the earlier decision stands ready for summary judgment.

## ARGUMENT

A district court "should" grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule limits the Court's discretion to refuse amendment by requiring a showing of "undue delay, bad faith, undue prejudice to the opposing party," or similar problems. *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999). Among these showings, the "most important" is "the possibility of prejudice to the opposing party." *Bronner v. Duggan*, 324 F.R.D. 285, 290–91 (D.D.C. 2018) (citations and internal quotation marks omitted). Such prejudice is present here.[2]

---

[1] Available at https://www.faa.gov/media/94346.

[2] Plaintiffs also frame their motion as seeking to file a supplemental complaint under Rule 15(d). Such motions are more readily denied than motions to amend under Rule 15(a)(2), the key question being whether allowing the supplemental complaint "serves the interests of judicial economy and convenience." *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 12 (D.D.C. 2017).

**A.     Allowing Plaintiffs to add a new challenge to a new decision at this late stage in the case would prejudice SpaceX.**

An amended complaint can prejudice the parties in a variety of ways. For one, "it is fairly well established that denying leave to amend is particularly appropriate when a lawsuit is on the verge of final resolution." *Hoffman v. United States*, 266 F. Supp. 2d 27, 34 (D.D.C. 2003) (citation and internal quotation marks omitted). Plaintiffs "cannot be permitted to circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens." *Id.* (citation and internal quotation marks omitted). This problem compounds when the amendment comes long after the original complaint: "A delay of several years between the filing of the initial action and the request to amend is generally undue and suggests prejudice to the defendant." *Borda v. United States Dep't of Justice*, 306 F. Supp. 3d 306, 313 (D.D.C. 2018).

This case, as it stands, is confined to the FAA's decision to license SpaceX's original Starship launch program. That decision was made more than two years ago, following issuance of the PEA over three years ago, in June 2022. Plaintiffs sued in May 2023 and the parties have since completed summary judgment briefing on that challenge to the FAA's original licensing decision and supporting PEA.[3] The Court has now taken Plaintiffs' NEPA challenge under advisement. July 23, 2025 Minute Order.

Plaintiffs should not be allowed to prolong this case by adding new claims challenging a new action more than two years after filing suit, and after summary judgment briefing on existing claims is complete. Plaintiffs simply cannot show that their request to amend is timely in these

---

[3] Plaintiffs later amended their complaint in August 2024. ECF 36. But the new claims were held in abeyance and then dropped by Plaintiffs. *See* Nov. 21, 2024 Minute Order (holding in abeyance Plaintiffs' "second and third theories for relief" added by the amended complaint); ECF No. 61 (status report stating that "Plaintiffs will no longer be pursuing the 'second and third theories for relief' as set forth in the [amended complaint]"); July 22, 2025 Minute Order (dismissing as moot SpaceX's motion to dismiss those claims).

circumstances. Furthering their delay, Plaintiffs waited months after the FAA issued the Tiered EA and authorized a cadence increase in April 2025, before filing their motion to amend in July 2025. This type of successive, purely procedural NEPA challenge suggests the kind of tactic that the Supreme Court warned against in *Seven County*: "Some project opponents have invoked NEPA and sought to enlist the courts in blocking or delaying even those projects that otherwise comply with all relevant substantive environmental laws." 145 S. Ct. at 1513.

To make matters worse, Plaintiffs' new challenge to the FAA's 2025 decision approving SpaceX's increased launch cadence would involve a new, different administrative record. The tiered EA for that decision alone includes more than 1,100 pages of material, including new noise impacts analysis and responses to comments, none of which appears in the administrative record for the FAA's 2022 decision. This new record will mean new summary judgment briefing and a new decision—a process that presumably will wait until the Court rules on the already-pending summary judgment motions.

All of this hurts SpaceX because the 2022 PEA supports its current, ongoing Starship launch program. If the Court faults that review as it considers the FAA's 2022 licensing decision, SpaceX needs to know so it can address any issues found or file an appeal. If the Court upholds the PEA, then SpaceX and the FAA can keep relying on it as support for future licensing decisions. *See Theodore Roosevelt Conservation P'ship*, 616 F.3d at 511–12. So the summary judgment motions now pending before the Court are crucial to SpaceX's operations in Texas. By amending their complaint, Plaintiffs could delay a final judgment in this case, prevent any appeal, and prolong the uncertainty caused by ongoing litigation over the FAA's foundational environmental review document. That uncertainty prejudices SpaceX.

At the same time, Plaintiffs would not be prejudiced if they had to file a new case to challenge the FAA's 2025 licensing decision. Yes, they would have to pay a filing fee of just over $400. *See* https://www.dcd.uscourts.gov/fee-schedule. Beyond that, though, the only difference for them between filing a new case and amending their complaint in this one is that they would have to deal with a final judgment in this case as opposed to an interim ruling. Either way, their challenge to the FAA's 2022 licensing decision will be resolved long before they litigate their new challenge to the FAA's 2025 decision.

Indeed, allowing this case to conclude may save Plaintiffs' resources, along with those of the Court, Federal Defendants, and SpaceX, because the Court's resolution of the pending cross-motions for summary judgment may show that it would be futile for Plaintiffs to file a new NEPA suit. As SpaceX has explained, the FAA was not required to study the issues Plaintiffs raise—in their existing claims or proposed new ones—in issuing launch licenses under the Commercial Space Launch Act. *See* ECF 49-1 at 6–13; ECF 56 at 2–7; *see also Seven Cnty.*, 145 S. Ct. at 1516 (explaining that "agencies are not required to analyze the effects of projects over which they do not exercise regulatory authority").

Thus, denying Plaintiffs' motion to amend will cause them no prejudice.

\*       \*       \*

Especially after the Supreme Court's decision in *Seven County*, the focus of judicial review in a NEPA challenge must be the agency's decision. 145 S. Ct. at 1511–12. Plaintiffs' amended complaint would drag a new challenge to a new agency decision into a case that is already poised for a ruling on summary judgment. In so doing, Plaintiffs would prejudice SpaceX by prolonging the litigation-related uncertainty that surrounds an environmental review document supporting the

company's Texas operations. Thus, even recognizing that leave to amend should be freely given, it should in this case be denied.

Alternatively, the Court could stay any decision on the motion to amend until after the Court rules on the pending summary judgment motions as the Court's ruling may make further litigation on Plaintiffs' NEPA claims, whether in this case or another, futile.

## CONCLUSION

The Court should deny Plaintiffs' motion for leave to file an amended and supplemental complaint.

Dated: August 18, 2025

Respectfully submitted,

By: */s/ Tyler Welti*
Tyler Welti (D.C. Bar No. 1015691)
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111
415.653.3714
415.653.3755 (fax)
tgwelti@venable.com

Jay C. Johnson (D.C. Bar No. 487768)
VENABLE LLP
600 Massachusetts Avenue NW
Washington, DC 21
202.344.4
jcjohnson@venable.com

Attorneys for Intervenor-Defendant Space
Exploration Technologies Corp.